Michael SPRADLIN and Timothy Spradlin, Appellants, (Defendants Below),

v.

STATE of Indiana, Appellee. (Plaintiff Below).

No. 15S04–9104–CR–300.

Supreme Court of Indiana.

April 15, 1991.

Susan K. Carpenter, Public Defender and David P. Freund, Deputy Public Defender, Indianapolis, for Michael Spradlin.

Brent Westerfeld, Indianapolis, for Timothy Spradlin.

Linley E. Pearson, Atty. Gen. and Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for the State.

KRAHULIK, Justice.

Michael Spradlin and Timothy Spradlin ("the Spradlins"), in separate petitions to transfer, ask this Court to clarify the question as to whether or not it is reversible error to fail to instruct the jury that, in order to find the defendants guilty of attempted murder, the State must prove that, at the time of the commission of the act, the defendants intended to kill the victim. We answer that question in the affirmative and hold that the jury should have been instructed that, in order to convict the defendants of the crime of attempted murder, the State must prove that the defendants intended to kill a human being and took a substantial step to do so. Therefore, we grant transfer and reverse.

The evidence most favorable to the verdict shows that on Saturday, October 1, 1988, Robert Grubbs ("Grubbs"), Kevin Applegate ("Applegate"), and three female

friends returned to West Harrison, Indiana, from an evening of dancing together in Cincinnati, Ohio. Upon their return to West Harrison, the group decided to purchase a 12–pack of beer. Grubbs left the others in the car and went inside a local bar. While Grubbs was inside, his friends were approached by Timothy Spradlin ("Timothy") and an unidentified woman. The woman asked the friends where they could purchase alcohol and were told that they should try the bar in which Grubbs was making his purchase. Timothy and the woman walked down the sidewalk until they were out of sight.

Grubbs made his purchase and came back to the car. Applegate then drove the car to Grubbs' apartment, which was a very short distance from the bar. While driving to Grubbs' apartment, the car passed Timothy and the unidentified woman. When they parked the car at the apartment, Grubbs got out and started to cross the street. Applegate opened the trunk of the car to retrieve the women's purses. At this point, the unidentified woman threw a bottle into the street and threatened Grubbs. Despite Grubbs' protest that he wanted no trouble, Timothy attacked him with a golf club, breaking it across Grubbs' arm.

While Timothy attacked Grubbs, Michael Spradlin ("Michael") arrived and attacked Applegate with a knife. However, when Michael observed Grubbs recovering from Timothy's initial attack, he rushed over and stabbed Grubbs in the side as well as in the lung and the hand. Applegate and one of Grubbs' neighbors intervened, and Timothy and Michael fled.

Both defendants were charged with battery as to Applegate and attempted murder as to Grubbs. They were convicted by a jury on both charges. Timothy and Michael appealed and, in a memorandum decision, the Court of Appeals of Indiana, Fourth District, affirmed their convictions. The Spradlins, on Petition to Transfer, ask this Court to accept transfer and reverse the trial court for the reason that the opinion of the trial court contravenes the ruling precedent of this Court as set forth in *Smith v. State* (1984), Ind., 459 N.E.2d 355, as well as subsequent cases. Additionally, Timothy asks us to reverse on the basis of the trial court's improperly giving two additional instructions which Timothy contends were erroneous.

## I. *Specific Intent to Kill is Required to Convict for Attempted Murder*

 Ind.Code § 35–41–5–1, the general attempt statute, was enacted in 1976 and provides, in part, as follows:

A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime.

The interpretation of this statute with regard to the crime of attempted murder was first undertaken by this Court in the case of *Zickefoose v. State* (1979), 270 Ind. 618, 388 N.E.2d 507. In *Zickefoose*, Justice Hunter offered an excellent analysis of the then new attempt statute. Citing extensive authority from other jurisdictions, Justice Hunter, speaking for the unanimous Court, said:

Although there are somewhat varying definitions of what conduct actually constitutes an attempt, there is fundamental agreement on the two necessary elements of the crime. First, the defendant must have been acting with a *specific intent* to commit the crime, and second, he must have engaged in an overt act which constitutes a substantial step toward the commission of the crime.

(Emphasis supplied) 388 N.E.2d at 510. Five years later, this Court again analyzed the crime of attempted murder. In *Smith v. State* (1984), Ind., 459 N.E.2d 355, this Court, by a three to two vote, reversed the defendant's conviction for attempted murder because the trial court erroneously failed to instruct the jury that it must find that the defendant had the specific intent to commit murder in order to be found guilty of attempted murder. The specific instruction that was reversed in that case is as follows:

### STATE'S INSTRUCTION NO. 3

You are instructed that the essential elements of the crime of Attempted Murder which the State of Indiana must prove beyond a reasonable doubt are the following:

1. That the Defendant [sic] knowingly
2. Engaged in conduct that constituted a substantial step toward the commission of Murder.

The Court specifically held that such instruction, "which purports to state the essential elements of the crime of attempted murder, fails to include an essential element of the offense, namely that the Defendant must have had the specific intent to commit murder in order to be found guilty of attempted murder." 459 N.E.2d at 357. After examining the other instructions that were given and finding that none of the instructions contained any statement to the effect that, if the defendant is to be found guilty of attempted murder, there must first be a finding that when he engaged in the conduct proscribed, he intended to kill the victim. The Court stated:

> Thus we are left with instructions which would lead the jury to believe that the Defendant could be convicted of attempted murder if he knowingly engaged in conduct which constituted a substantial step toward the commission of murder. Although one may be guilty of murder, under our statute, without entertaining a specific intent to kill the victim, he cannot be guilty of attempted murder without entertaining such intent.

459 N.E.2d at 358.

From that time to the present, the Court has been faced with a variety of attempted murder instructions. *See Santana v. State* (1986), Ind., 486 N.E.2d 1010; *Worley v. State* (1986), Ind., 501 N.E.2d 406, (the court held that the instruction "much more clearly apprised the jury of the element of specific intent"), *King v. State* (1988), Ind., 517 N.E.2d 383, (the court approved the challenged instruction as being "more similar" to the instruction in *Worley* than the one in *Smith* and, additionally, stated that "[i]t would have been preferable for the trial court to give explicit instructions on specific intent to murder, but implicit within the instruction is the element that King intended to kill Patterson"); *Abdul–Wadood v. State* (1988), Ind., 521 N.E.2d 1299, (the court reversed the trial court for committing fundamental error by failing to instruct the jury that specific intent to kill is a requisite element of the crime of attempted murder); *Jackson v. State* (1989); Ind., 544 N.E.2d 853, (this Court reversed the trial court for failing to inform the jury "of the elements of attempted murder, namely that defendant with intent to kill (the victim) took a substantial step to accomplish that end"); and most recently, *Hurt a/k/a Miller v. State* (1991), Ind., 570 N.E.2d 16 (this Court did not reverse the trial court for giving instructions substantially similar to those condemned in this case and in earlier cases because the trial court did, in another instruction, inform the jury that attempted murder is a crime of specific intent). Henceforth, we hold that an instruction which purports to set forth the elements which must be proven in order to convict of the crime of attempted murder must inform the jury that the State must prove beyond a reasonable doubt that the defendant, with intent to kill the victim, engaged in conduct which was a substantial step toward such killing.

■ In the present case the trial court, after reading the statutory definition of attempt, Ind.Code § 35–41–5–1, and the statutory definition of murder, Ind.Code § 35–42–1–1(1), instructed the jury as follows:

### INSTRUCTION NO. 6

To convict the defendants, the State must have proved each of the following elements:

The defendants

1. knowingly or intentionally

2. strike, stab and cut the body of Robert Grubbs

3. that the conduct was a substantial step toward the commission of the crime of murder.

If the State failed to prove each of these elements, you should find the defendants not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendants guilty of the crime of Attempted Murder, a Class A felony.

The appellate court analyzed these instructions and found that, when read together, the instructions were basically the same as those in *Worley* and *King*. Citing *King*, the appellate court further found that "there can be no doubt that the instructions here are sufficient to inform the jury of the necessity of finding the defendants intended to kill Grubbs." In a nutshell, we disagree. Nowhere in the instructions is there a requirement that the State prove that the Spradlins, at the time that they struck, stabbed and cut the victims, intended to kill such victims. We hold that, by definition, there can be no "attempt" to perform an act unless there is a simultaneous "intent" to accomplish such act. Simply stated, in order to attempt to commit a crime, one must intend to commit that crime while taking a substantial step toward the commission of the crime. Here the jury was not instructed that such proof was required. For that reason, we reverse.

## II. *Instructions*

■ Timothy Spradlin raises two additional issues regarding instructions. In view of our decision to reverse the convictions for the reasons stated above, we need not decide these two additional issues. However, we believe it is appropriate to comment on one of the two issues to aid the trial court in the event of a re-trial.

The court instructed the jury as follows:

The rule of law which clothes every person accused of the commission of crime with the presumption of innocence, and imposes upon the State the burden of establishing his guilt beyond a reasonable doubt, is not intended to aid any one [sic] who is actually guilty of the commission of the crime to escape from just and merited punishment, but it is a humane provision of the law, which is intended, so far as human agencies can, to guard against the danger of an innocent person being unjustly accused and punished.

(R. 267). (Final Instruction No. 11). The Court of Appeals, in determining that such instruction was not erroneous, relied upon our approval of a similar instruction in *Heald v. State* (1986), Ind., 492 N.E.2d 671, *reh. denied.* The dissent in *Heald* stated that such instructions are prejudicial and their use should be discouraged. This Court agrees with the previously-voiced disapproval as expressed by the dissent in *Heald.* Such instruction adds little, if any, elucidation for the jury. We recommend that it not be used in future cases.

The memorandum decision of the Court of Appeals is hereby vacated, the convictions of the Spradlins are reversed, and this cause is remanded to the trial court for a new trial.

SHEPARD, C.J., DeBRULER and DICKSON, JJ., concur.

GIVAN, J., dissents with opinion.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion in this case. In appellants' petition to transfer, they claim this Court's opinions have "reached such disparate and different results based on essentially similar factual situations that there is no longer any principled or reasoned way to differentiate the differing outcomes of cases." In so stating, appellants are referring to our various cases concerning what is a proper instruction in attempted murder cases.

To the extent the appellants' statement be true, the confusion is brought about by statements which are now followed by the majority in this case. The majority sets out Instruction No. 6, wherein the trial court instructed the jury that the State must have proved:

"The defendants

1. knowingly or intentionally

2. [struck, stabbed] and cut the body of Robert Grubbs,

3. that the conduct was a substantial step toward the commission of the crime of murder."

In his memorandum opinion in the Court of Appeals, Judge Conover states,

"There can be no doubt that the instructions here are sufficient to inform the jury of the necessity of finding the defendants intended to kill Grubbs."

I fail to see how there can be any doubt that Judge Conover's observation is correct.

If, as found by the majority, his statement is erroneous, we then have the anomalous situation in this State that had Grubbs died, the appellants could have been convicted of murder because of their use of a deadly weapon in a manner calculated to cause death. Yet, when they engage in precisely the same conduct and the victim does not die, they cannot be found guilty of attempted murder unless the State by some as-yet-unperceived divining rod can penetrate their brains and determine whether they intended to kill the victim without taking into any consideration whatsoever their acts in attempting to perpetrate such a crime. Today's majority opinion, instead of clearing the air on this subject, leaves prosecuting attorneys and trial courts in an implausible and impossible position.

The majority also has instructed trial courts not to use the instruction that the presumption of innocence is not intended to prevent just punishment of the guilty. This is a stock instruction that has been used for many years. I believe it serves a purpose in aiding lay jurors in understanding the intention of the law. I believe it is a useful instruction that should be given.

Because Judge Conover's opinion is right on target, I would deny transfer.