Ronald E. ELLIOTT, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 90A02–0208–CR–687.

Court of Appeals of Indiana.

April 21, 2003.

Eugene C. Hollander, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Ronald E. Elliott ("Elliott") was found guilty of attempted murder,[1] a Class A felony, and invasion of privacy,[2] as a Class B misdemeanor, after a jury trial in Wells Circuit Court. He appeals raising two issues, which we restate as:

I. Whether the trial court properly instructed the jury on the elements of attempted murder; and,

II. Whether sufficient evidence was presented to support Elliott's conviction for attempted murder.

Because we find that the trial court properly instructed the jury and that sufficient evidence was presented to support his conviction, we affirm.

### Facts and Procedural History

Elliott and Barbara Elliott ("Barbara") were married for thirty years when she decided to leave him. Twenty years prior to the present incident, when he discovered that she was seeing another man, Elliott pointed a gun at Barbara's head and told her that if she ever left him, he would kill her. Tr. p. 75. Barbara returned to Elliott at that time, but eventually left him in the summer of 2001. Elliott threatened that he would hunt Barbara down and kill her, and because of this threat, she obtained a permanent protective order. Tr. p. 73.

Karlene Jackson ("Jackson"), a neighbor, spoke with Elliott on two different occasions in the weeks before the present incident. She stated that he was distraught the first time, and he told her he was going to blow himself or someone else away. Tr. p. 95. The second time she spoke with him, he was still distraught and stated that he had guns and that if he could not have Barbara, then no one could. Tr. p. 97.

On the morning of September 18, 2001, Elliott drove to Cackleberry Corner, a chicken breeding house located in Southern Wells County, where Barbara worked

---

1. Ind.Code § 35–42–1–1 (1998 & Supp.2002); Ind.Code § 35–41–5–1(a) (1998).

2. Ind.Code § 35–46–1–15.1(1) (1998 & Supp. 2002).

packing eggs. He waited in a bean field next to the chicken house, with a twelve-gauge shotgun in his possession, which was loaded with four deer slugs.[3] Barbara arrived at approximately 8:00 a.m. with their daughter, Amanda. Barbara parked her van in front of the building, very close to the stairs leading into the chicken house. As she walked toward the chicken house, she heard a loud bang. She turned around and saw Elliott with the shotgun. Barbara then began to run, and Elliott caught up with her with the shotgun still in his hands. She struggled with Elliott for control of the gun and managed to push the barrel of the gun to the ground. Barbara yelled for Amanda to get help. During the struggle, Barbara began to scream, and Elliott put his hand over her mouth to stop her. She quickly decided to take his glasses off and throw them away because she knew that he could not see very well without them. After she did this, Elliott released the shotgun to search for his glasses, and Barbara took the shotgun and ran. She ran across the road, flagged down a passing truck, and contacted the police.

Deputies from the Wells County Sheriff's Department found Elliott sitting in his car at his home. In Elliott's car, they found a notebook with the words "Some say you should die" written at the top. Ex. Vol., State's Ex. 8. When Elliott was processed for jail, the deputies found a letter in his pocket written by him to Barbara. In the letter, Elliott wrote that "I can't let [Barbara] free and not living with me." Ex. Vol., State's Ex. 3. The letter concluded with the statements, "God bless take both of us to Heaven" and "I really did love you." *Id.*

On September 19, 2001, Elliott was charged with attempted murder, a Class A felony, and invasion of privacy, as a Class B misdemeanor. A jury trial was held on March 4 and 5, 2002, after which Elliott was found guilty of both counts. He was sentenced to thirty years for the attempted murder count and one hundred and eighty days for the invasion of privacy count, which were to be served concurrently in the Department of Correction. Elliott now appeals.

## I. Jury Instruction

Jury instructions are solely in the discretion of the trial court, and we will reverse only if the trial court abuses that discretion. *Smith v. State,* 777 N.E.2d 32, 34 (Ind.Ct.App.2002). Jury instructions inform the jury of the law applicable to the facts of the particular case. *Clark v. State,* 732 N.E.2d 1225, 1230 (Ind.Ct.App.2000). The instructions can be found erroneous if they misstate the law or otherwise mislead the jury. *Smith,* 777 N.E.2d at 34.

Elliott argues that the trial court abused its discretion when it refused to give his tendered instruction on attempted murder and instead, gave its own instruction, which Elliott claims was improperly worded. He contends that the trial court's attempted murder instruction failed to properly instruct the jury that the State must prove beyond a reasonable doubt that he engaged in conduct which was a substantial step toward the killing of the victim with the intent to kill her.

Indiana courts have "emphasized the importance of requiring specific intent to kill before a defendant can be convicted of attempted murder." *Booker v. State,* 741 N.E.2d 748, 751 (Ind.Ct.App.2000) (citing *Ramsey v. State,* 723 N.E.2d 869, 871 (Ind.2000)). An attempted murder instruction is required to inform the jury that the State must prove beyond a reasonable doubt that the defendant intended to kill the victim while taking a substantial

---

**3.** A deer slug is a single, solid projectile. Tr. p. 107.

step toward this killing. *Sanders v. State,* 764 N.E.2d 705, 710 (Ind.Ct.App.2002), *trans. denied* (citing *Spradlin v. State,* 569 N.E.2d 948, 950 (Ind.1991)). Error results when an attempted murder instruction does not state the requisite intent to kill. *Woodson v. State,* 767 N.E.2d 1022, 1026 (Ind.Ct.App.2002). In some cases, despite finding error, attempted murder instructions have been upheld when: (1) the intent of the defendant was not a central issue in the case; (2) the instructions, taken as a whole, sufficiently suggest the requisite intent to kill; or (3) both. *Id.* Therefore, when both the intent of the defendant is at issue and the attempted murder instructions as a whole do not inform the jury that it is necessary to find that the defendant intended to kill the victim, fundamental *Spradlin* error occurs. *Id.*

In this case, Elliott's intent at the time he shot the gun was at issue in the trial because he claimed that he only shot the gun to scare Barbara, and the State contended that he shot with the intent to kill her. The trial court gave the following attempted murder instruction to the jury:

The crime of attempted murder is defined as follows: A person attempts to commit a murder when, acting with the conscious purpose of killing another person, he engages in conduct that constitutes a substantial step toward killing that person.

To convict the Defendant of attempted murder the State must have proved each of the following elements:

The Defendant

1.  acting with the conscious purpose of killing Barbara Elliott

2.  did fire a deadly weapon at Barbara Elliott

3.  which was conduct constituting a substantial step toward the commission of the intended crime of killing Barbara Elliott.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the Defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the Defendant guilty of the crime of attempted murder, a Class A felony.

Appellant's App. p. 281.

■ In *Clay v. State,* 766 N.E.2d 33 (Ind.Ct.App.2002), this court held that an almost identical attempted murder instruction adequately informed the jury of the requirement that the State prove the defendant had the specific intent to kill the victim. *Id.* at 38. This was because the term "conscious purpose" was found to have the same meaning as "specific intent" and to inform the jury that the State must prove that the defendant intended to kill the victim.[4] *Id.* at 37.

■ We agree that the words "conscious purpose" have the same meaning as "specific intent." *See id.* Therefore, by giving the instruction at issue, the trial court properly instructed the jury that the State had to prove beyond a reasonable doubt that Elliott, with the specific intent to kill Barbara, engaged in conduct which was a substantial step toward this killing.

4.  Although this court found that it was not fundamental error to use the words "conscious purpose," we stated that "confusion and needless appeals could be avoided if courts would use the phrase 'specific intent,' which is consistent with the *Spradlin* decision, or 'acting with intent to kill a human being' under *Williams* [*v. State,* 735 N.E.2d 785 (Ind.2000)], when instructing juries." *Clay,* 766 N.E.2d at 37 n. 7. We agree with this statement and reiterate and emphasize the same recommendation to our trial courts.

## II. Sufficient Evidence

Our standard of review for sufficiency claims is well settled. We neither reweigh the evidence nor judge the credibility of the witnesses. *Cox v. State*, 774 N.E.2d 1025, 1029 (Ind.Ct.App.2002). We only consider the evidence most favorable to the verdict and the reasonable inferences that can be drawn therefrom. *Id.* Where there is substantial evidence of probative value to support the judgment, it will not be disturbed. *Armour v. State*, 762 N.E.2d 208, 215 (Ind.Ct.App.2002), *trans. denied.*

Elliott contends that his conviction for attempted murder was not supported by sufficient evidence. He claims that his conviction was not based on factual evidence, but was instead based on the State's efforts to create theoretical possibilities.

In order to convict Elliott of attempted murder, the State was required to prove beyond a reasonable doubt that Elliott acted with the specific intent to kill and that he engaged in conduct constituting a substantial step toward the killing of Barbara. Ind.Code § 35–42–1–1 (1998 & Supp.2002); Ind.Code § 35–41–5–1(a) (1998). "Intent to kill may be inferred from the nature of the attack and the circumstances surrounding the crime." *Kiefer v. State*, 761 N.E.2d 802, 805 (Ind. 2002) (citing *Nunn v. State*, 601 N.E.2d 334, 339 (Ind.1992)). The intent to kill may also be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily injury. *Id.*

In the present case, the State presented evidence that on September 18, 2001, Elliott drove to Barbara's place of work, armed with a twelve-gauge shotgun loaded with four deer slugs and waited in a bean field for her to arrive. Almost as soon as Barbara arrived, Elliott fired the shotgun twice a short distance from where Barbara was located. One of the slugs traveled toward the direction of Barbara, down the length of the chicken house and through a grain bin located at the far end of the chicken house. This slug would have been only a short distance, as little as one and a half feet, above Barbara's head. Tr. p. 206.

Elliott claims that he only shot the gun in order to scare Barbara into coming back to him. The evidence presented contradicts this claim. Twenty years prior to this incident, Elliott had pointed a gun at Barbara's head and threatened to kill her if she ever left him. Tr. p. 75. Barbara then left him in the summer of 2001, and during that summer, Elliott told her that he would hunt her down and kill her to keep her from leaving him. Tr. p. 73. He also told a neighbor that he was going to "blow himself or someone else away." Tr. p. 95. He also stated that he had guns and "if I can't have Barbara nobody can." Tr. p. 97. A letter was also found in Elliott's possession at the jail. It stated that he could not let Barbara free and not living with him. Ex. Vol., State's Ex. 3. The letter closed with the statements "God bless take both of us to Heaven" and "I really did love you." *Id.* A notebook was also found in Elliott's car, which had the words "Some say you should die" written across the top. Ex. Vol., State's Ex. 8.

Under the facts and circumstances of this case, more than sufficient evidence was presented to prove that Elliott had the specific intent to kill Barbara, and therefore, to support his conviction for attempted murder.

### Conclusion

The trial court properly instructed the jury on the element of attempted murder

and the evidence presented was sufficient to convict Elliott of attempted murder.

Affirmed.

KIRSCH, J., and MATTINGLY–MAY, J., concur.