## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Jack Quirk
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James T. Cole,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 13, 2019

Court of Appeals Case No.
18A-CR-1339

Appeal from the Delaware Circuit Court

The Honorable John M. Feick, Judge

Trial Court Cause No.
18C04-1211-FA-9

**Baker, Judge.**

[1] James Cole appeals his conviction for Class A Felony Attempted Murder,[1] arguing that the jury received an erroneous instruction and that the evidence is insufficient. Finding no reversible error and sufficient evidence, we affirm.

## Facts

[2] During the afternoon of November 6, 2012, Cindy Dunn and two tellers were working at First Merchants Bank in Muncie. There were also two customers inside the bank. Two men with guns, later identified as Cole, who carried an assault rifle, and Malcolm Crim, who carried a revolver handgun, entered the bank. Dunn hit the panic button.

[3] Cole and Crim forced everyone to stand in the middle of the bank lobby. Cole demanded that Dunn let him behind the locked counter into the teller area; she complied and he proceeded to remove money from the teller drawers and put it in his backpack. Cole then forced Dunn and one of the tellers to let him into the bank vault, where he took more money and put it in his backpack. Throughout the robbery, Cole told the victims that if the police showed up, there would be casualties. Tr. Vol. III p. 62 ("[h]e had earlier told us that if the police showed up, that he would start shooting"), 83 ("[t]hey said that there would be casualties" if the police arrived), 97 ("[h]e said that if the police

---

[1] Ind. Code §§ 35-42-1-1 (amended 2018), 35-41-5-1 (amended 2014).

showed up there would be casualties"), 106 (he said that "there would be casualties" if police arrived).

[4] Cole and Crim exited out of the front door of the bank and got into a maroon car. As they tried to flee, they encountered a police car being driven by Yorktown Police Officer Ryan Jaromin. Officer Jaromin stopped behind the maroon vehicle and immediately, the driver's side door opened and Cole exited, aiming his gun at Officer Jaromin. Officer Jaromin raised his sidearm and fired; he then exited his police vehicle, ducking down and seeking cover behind a nearby tree. Cole proceeded to point his rifle and fire eight times at Officer Jaromin, who could hear the bullets flying by him as he ran. The customers and employees inside the bank watched as Cole fired his gun at the officer and the police car. One customer, who was in her vehicle in the bank drive through lane with her children, testified that "[Cole] jumped out of the car [and] was walking down this way and he kept turning back and firing towards the police car right here. And he'd walk a little bit further, and then he'd fire some more, and then he walked a little bit further . . . ." *Id.* at 116.

[5] Yorktown Police Officer Jeff Wulff arrived at the scene to assist Officer Jaromin. Cole tried to steal a car from a passerby to escape, but he was unsuccessful. Officer Wulff and Cole engaged in a shootout, and Officer Wulff was ultimately able to subdue and arrest Cole. The officers found Crim inside the maroon vehicle and arrested him.

[6]     On March 14, 2012, the State charged Cole with Class A felony attempted murder, Class B felony conspiracy to commit robbery, Class B felony armed robbery, three counts of Class B felony criminal confinement, and Class B felony attempted carjacking. At some point after Cole was released on bail, he absconded to Colombia and failed to appear in court.[2] After that, the State added two counts of Level 6 Felony failure to appear.

[7]     Cole's jury trial took place on February 26-March 1, 2018. The trial court instructed the jury on the State's attempted murder charge and the elements of that crime as follows:

> This is a criminal case brought by the State of Indiana against James T. Cole. . . .
>
> Omitting the formal parts, the information for Count 1 reads as follows:
>
> The undersigned says that on or about November 6, 2012 in Delaware County, State of Indiana, James T. Cole did attempt to commit the crime of Murder, which is defined as to knowingly kill another human being, namely: Ryan Jaromin, by engaging in conduct, to-wit: knowingly fired a gun at Ryan Jaromin, with the intent to kill, which conduct constituted a substantial step toward the commission of said crime of Murder . . . .
>
> The crime of Attempted Murder is defined by law as follows:

---

[2] Cole was later extradited back to the United States. Tr. Vol. IV p. 83.

A person attempts to commit a murder when, acting with the specific intent to kill another person, he engages in conduct that constitutes a substantial step toward killing that person.

Before you may convict the Defendant of attempted murder, the State must have proven each of the following beyond a reasonable doubt;

1. The Defendant

2. Acting with specific intent to kill Ryan Jaromin

3. Fired a gun

4. [W]hich was conduct constituting a substantial step toward the commission of the intended crime of killing Ryan Jaromin.

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of Attempted Murder, a Class A felony as charged in Count 1.

Appellant's App. Vol. III p. 109 (preliminary instruction), 151 (final instruction). Cole objected to the final instruction because it included the term "knowingly" in the second paragraph. The trial court overruled the objection because "I don't think I have the authority to change the charging information. And the elements on that same page, I think handle" specific intent properly. Tr. Vol. IV p. 117-18.

The jury found Cole guilty as charged. On May 3, 2018, the trial court sentenced Cole to an aggregate term of ninety-two and one-half years imprisonment. Cole now appeals.

# Discussion and Decision

Cole raises two arguments on appeal: (1) the jury instruction setting forth the State's charging language with respect to the attempted murder charge was erroneous; and (2) the evidence is insufficient to support the attempted murder conviction.

# I. Jury Instruction

First, with respect to the jury instruction, the purpose of jury instructions is "'to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict.'" *Munford v. State*, 923 N.E.2d 11, 14 (Ind. Ct. App. 2010) (quoting *Murray v. State*, 798 N.E.2d 895, 899-900 (Ind. Ct. App. 2003)). We will reverse a trial court with respect to jury instructions only if the instructions misstate the law or otherwise mislead the jury. *Id.* We will consider jury instructions as a whole and in reference to each other, not in isolation. *Id.*

Jury instructions that set forth the elements of attempted murder must inform the jury that to find the defendant guilty, the State must have proved beyond a reasonable doubt that the defendant intended to kill the victim and took a substantial step towards meeting that goal. *Clay v. State*, 766 N.E.2d 33, 36 (Ind. Ct. App. 2002). In other words, the instruction "must include an

explanation that the act must have been done with the specific intent to kill," *Sanders v. State*, 764 N.E.2d 705, 710 (Ind. Ct. App. 2002), and "should make no mention of the mens rea of 'knowingly,'" *Booker v. State*, 741 N.E.2d 748, 751 (Ind. Ct. App. 2000).

[12]  Here, the jury instruction does, indeed, make mention of the mens rea of knowingly—but it does so in the context of relaying the State's charging language, which stated that murder "is defined as to knowingly kill another human being . . . ." Appellant's App. Vol. III p. 151. The instruction makes it clear that it was merely restating the charge and does not imply that "knowingly" is an element of attempted murder.

[13]  To the extent that this language in the instruction could be confusing, the instruction goes on to clearly and specifically set forth the elements of attempted murder. It twice states that the State must prove that Cole acted "with the specific intent to kill," and states that if the State fails to prove each element beyond a reasonable doubt, the jury must find Cole not guilty. *Id.* Under these circumstances, we find that the instructions as a whole did not mislead the jury or misstate the law, and we decline to reverse on this basis.[3]

---

[3] We also note that even if the instruction had been erroneous, we would have found it harmless. *See Randolph v. State*, 802 N.E.2d 1008, 1013 (Ind. Ct. App. 2004) (noting that a jury instruction error is harmless where the conviction is clearly sustained by the evidence and the instruction would not likely have impacted the jury's verdict). The record is replete with evidence of Cole's specific intent to kill Officer Jaromin, as will be explored in the next section.

## II. Sufficiency

[14] Next, Cole argues that the evidence is insufficient to support his attempted murder conviction. In reviewing a challenge to the sufficiency of the evidence, we will neither reweigh the evidence nor assess witness credibility. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We will examine the evidence in a light most favorable to the verdict and will affirm unless no reasonable factfinder could find the elements proved beyond a reasonable doubt. *Id.*

[15] To convict Cole of attempted murder, the State was required to prove beyond a reasonable doubt that he, acting with the specific intent to kill Officer Jaromin, engaged in conduct constituting a substantial step toward the commission of murder. I.C. §§ 35-42-1-1, 35-41-5-1. Cole's only argument on appeal is that the State did not prove beyond a reasonable doubt that when he fired the gun, he was acting with the specific intent to kill Officer Jaromin. In particular, he denies that he was shooting "at" the officer and instead claims that he was haphazardly firing his weapon to protect himself from Officer Jaromin, who fired his weapon first.

[16] Multiple witnesses testified that during the robbery, Cole stated that if the police arrived at the bank, he would begin shooting and that there would be casualties. Then, when Cole actually had the confrontation with Officer Jaromin, multiple witnesses testified that he pointed an assault rifle at the officer and fired eight times. As Officer Jaromin ran for cover, he could hear bullets flying by him. Intent to kill "may be inferred from the deliberate use of a deadly weapon in a

manner likely to cause death or serious injury." *Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008) (also noting that "firing a gun in the direction of an individual is substantial evidence from which a jury may infer intent to kill"). We find this evidence sufficient to support Cole's conviction for Class A felony attempted murder.

[17] The judgment of the trial court is affirmed.

Najam, J., and Altice, J., concur.